IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BRANDON N. GRAY, | ) | No. C 06-0535 MJJ (PR) |
| | ) | |
| Petitioner, | ) | **ORDER DENYING PETITION** |
| | ) | **FOR A WRIT OF HABEAS** |
| v. | ) | **CORPUS** |
| | ) | |
| JAMES A. YATES, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, a California prisoner, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254. The Court ordered respondent to show cause why the petition should not be granted on the basis of petitioner's cognizable claims. Respondent filed an answer accompanied by a memorandum and exhibits contending that the petition should be denied. Petitioner filed a traverse accompanied by exhibits.

## FACTUAL AND PROCEDURAL BACKGROUND

The following factual account is set forth in the probation officer's report:

> On April 1, 2002, County Communications was advised of an armed robbery that occurred at 949 N. Main Street.
>
> Upon arrival, an officer made contact with the victim, Robert Rios. Rios advised that two males approached him as he was sitting at the above-mentioned address waiting for his friend to pick him up. The defendant, later identified as Brandon Gray, demanded the victim's wallet, however, believing they were playing an April Fool's prank, Rios asked if he was serious. Gray immediately responded, "I got a gun. Give me your wallet." He then stuck his hand in his pocket and began to make a clicking noise as if he was pulling back the hammer of a gun. The defendant then pulled a dark gray type handgun out of his pocket and put it back in.
>
> Out of fear for his safety, the victim complied with the defendant's request, handing over his wallet. Gray then threatened the victim by stating, "If you call the cop's [sic] I'm gonna come back and blow your fucking head off," and left the scene. As the victim's friend arrived he borrowed his cell phone and notified police of the robbery.

G:\PRO-SE\MJJ\HC.06\GRAYDN~1.WPD

Rios informed officers that his wallet contained $23.00 in cash, a Wells Fargo debit card, and various cards and papers.
On May 17, 2002, the defendant was taken into custody and interviewed about several robbery cases. He acknowledged taking a wallet, containing $21.00, from an individual at Sherwood Gardens. Gray claimed he was with a friend he met in the area, who suggested he rob someone with a gun. At which time, the defendant robbed the victim while brandishing the gun.

(Respt. Exh. C (errors in source).)

In September of 2002, the Monterey County Superior Court sentenced Petitioner to twelve years in state prison after he pled nolo contendere to a charge of second-degree robbery with a firearm use enhancement pursuant to California Penal Code §§ 211 and 12022.5. (Respt. Exh. H at 1.) Petitioner's appellate counsel filed a <u>Wende</u> brief on direct appeal, and on June 24, 2002, the California Court of Appeal affirmed the judgment. (Respt. Exhs. E, F, and G.) The California Supreme Court denied the petition for review. Petitioner subsequently filed unsuccessful habeas petitions in all three levels of the California courts. (Respt. Exhs. H, I, and J.) Petitioner filed the instant petition on January 27, 2006.

## DISCUSSION

A.   <u>Standard of Review</u>

This Court may entertain a petition for a writ of habeas corpus submitted by an individual in custody pursuant to a state court judgment only if the custody violates the United States Constitution, laws or treaties. 28 U.S.C. § 2254(a) (2005); <u>Rose v. Hodges</u>, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (2005); <u>Williams v. Taylor</u>, 529 U.S. 362, 402-03 (2000).

A state court decision qualifies as "contrary to" federal law if it directly

1     contravenes a Supreme Court decision on a question of law or reaches a conclusion

2     converse to a Supreme Court decision with materially indistinguishable facts. <u>Id.</u> at 413.

3     A state court decision involves an "unreasonable application" of federal law if it

4     "identifies the correct governing legal principle from [the Supreme] Court's decisions but

5     unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 412-13.  A

6     state court's summary or silent denial is deemed to be a merits adjudication despite an

7     absence of analysis or reference to the federal claim.  <u>Luna v. Cambra</u>, 306 F.3d 954, 960

8     (9th Cir. 2002), <u>amended</u> 311 F.3d 928 (9th Cir. 2002).  This Court must "look through"

9     such a summary denial to the last reasoned state court decision rejecting the claim.  <u>Ylst v.</u>

10    <u>Nunnemaker</u>, 501 U.S. 797, 803 (1991).

        In this case, the Monterey County Superior Court issued a reasoned decision

11    denying Petitioner's petition for writ of habeas corpus.  (Respt. Exh. H.)  Subsequently,

12    the California Court of Appeal and California Supreme Court summarily denied

13    Petitioner's habeas petitions.  (Respt. Exhs. I and J.)  Thus, Monterey County Superior

14    Court's opinion on habeas review is the last reasoned state court decision to address

15    petitioner's claims.

16 B.    <u>Legal Claims</u>

17

18       **1.**       **No Contest Plea Was Not Knowingly and Intelligently Entered**

        Petitioner contends that his nolo contendere plea was not knowingly and voluntarily

19    entered.[1]  (Petition at 27.)  Specifically, Petitioner alleges that the trial court failed to

20    inquire into his mental state at the change of plea hearing, that the plea was improperly

21    coerced by threats of a life sentence and induced by promises of minimal security custody,

22    and that the trial court failed to explain and articulate the elements of the robbery offense.

23    (<u>Id.</u> at 27-30.)

24

25

26        [1]This claim is Petitioner's second claim in his petition.  Petitioner's first claim --
     that he was denied effective assistance of appellate counsel in his direct appeal -- is

27    addressed below in Section B.2. of the discussion.

28   

Due process requires that a guilty or nolo contendere[2] plea be both knowing and voluntary because it constitutes the waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination. See Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). A trial court must ensure that a criminal defendant is competent to enter a guilty plea. See Godinez v. Moran, 509 U.S. 389, 396 (1993). A habeas petitioner bears the burden of establishing that his guilty plea was not knowing and voluntary. Parke v. Raley, 506 U.S. 20, 31-34 (1992).

The long-standing test for determining the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Id. at 29 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)). This requires a review of the circumstances surrounding the plea. See Brady v. United States, 397 U.S. 742, 749 (1970). Of particular importance is that defendant enter a guilty plea with "sufficient awareness of the relevant circumstances and likely consequences." Id. at 748. Further, the defendant must understand the law in relation to the facts. McCarthy v. United States, 394 U.S. 459, 466 (1969).

The transcript of the plea hearing plays a significant role in an inquiry into the validity of a plea. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). The defendant's, lawyer's, and prosecutor's representations at plea hearings, "as well any findings made by the judge accepting the plea, constitute formidable barriers in any subsequent collateral proceedings." Id. "Solemn declarations in open court carry a strong presumption of verity." Id. at 74. Subsequent unsupported conclusory allegations are subject to summary dismissal, "as are contentions that in the face of the record are wholly incredible." Id.

---

[2]California Penal Code section 1016 states that "a plea of nolo contendere shall be considered the same as a plea of guilty and [] upon a plea of nolo contendere, the court shall find the defendant guilty. The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes."

a.      Petitioner's Competency at the Change of Plea Hearing

Petitioner asserts that the trial court's failure to hold a pre-plea competency hearing violated his due process rights.  Specifically, Petitioner states that he "was severely medicated at the time of the plea and signing of waiver form, [and] was mentally incompetent to fully comprehend the constitutional rights he was foregoing."  (Petition at 5.)  Further, he alleges that on the morning of his plea hearing he had taken Valium in addition to his prescribed medications, which, in combination with his diagnosed "mental impairments," prevented him from being able to "ascertain or comprehend adequately for the purpose of the plea . . . the constitutional rights he was foregoing."  (Traverse at 10-11; Traverse Exh. C.)

Due process requires a court to conduct a competency hearing on its own motion, before permitting a defendant to waive constitutional rights, whenever a reasonable judge would be expected to have a bona fide doubt as to the defendant's competence.  See Miles v. Stainer, 108 F.3d 1109, 1112 (9th Cir. 1997).  Although no particular facts signal incompetence, suggestive evidence includes a defendant's demeanor before the trial court, previous irrational behavior, and available medical evaluations.  See id.

A state may presume that a defendant is competent and require him to shoulder the burden of proving his incompetence by a preponderance of the evidence.  See Medina v. California, 505 U.S. 437, 449 (1992).  State court competency determinations are entitled to a presumption of correctness.  See Brewer v. Lewis, 989 F.2d 1021, 1027 (9th Cir. 1993).  A federal court may overturn a state court competency finding only if it is not fairly supported by the record.  See id.

Petitioner alleges that on the day of the plea hearing he had consumed Zyprexa, Zoloft, Ativan, Xanax, Neurontin, and Valium.  (Traverse at 10.)  The Amen Clinic for Behavioral Medicine, Inc., in a report ordered by defense counsel, evaluated Petitioner's mental health and diagnosed him with "(1) ADHD (2) Anxiety disorder (3) Dysthymia (4) Polysubstance abuse (5) Closed head injuries (3) [sic] with visible scar over the left

1   temporal area (6) Mesial temporal lobe-Limbic Dysrhythmia r/o temporal lobe seizure

2   disorder." Further, the Medical Director for the Amen Clinic "would add one more

3   element to the diagnostic picture, that is serotonin discontinuation syndrome." (Traverse

4   Exh. C.) On habeas review, the Monterey County Superior Court determined that

5   Petitioner failed to "'positively, unequivocally, and clearly generate a real, substantial, and

6   legitimate doubt as to [his] mental capacity.'" (Respt. Exh. H at 2 (quoting <u>Reese v.

7   Wainwright</u>, 600 F.2d 1085, 1091 (5th Cir. 1979)).) The trial court further stated:

> Treatment with anti-psychotic[3] drugs does not *per se* render a defendant
> incompetent to stand trial or enter a guilty plea. <u>See</u> <u>Price v. Wainwright</u>
> (11th Cir. 1985) 759 F.2d 1549, 1555. Rather, a petitioner must present
> "evidence demonstrating that the dosage given [to] him affected him
> sufficiently adversely as to raise a doubt of his ability to consult with his
> lawyer and to have a rational understanding of the proceedings against
> him." <u>Id.</u> Petitioner has failed to meet his burden . . . . The transcript from
> the trial court's September 5, 2002, plea hearing demonstrates that
> Petitioner appeared rational and coherent throughout the hearing and did not
> respond to the court's questions in a manner that would raise any doubt
> regarding his competence to enter the nolo contendere plea.

14  (<u>Id.</u>)

15          The September 2, 2002, transcript indicates that a reasonable judge would not have

16  had a bona fide doubt as to Petitioner's competency to enter his plea. (Respt. Exh. B.)

17  The trial court inquired into whether Petitioner understood what his attorney said

18  regarding the plea and sentence, and Petitioner responded in the affirmative. (<u>Id.</u> at 1:10-

19  23.) Petitioner stated that he read and understood the constitutional rights he was waiving.

20  (<u>Id.</u> at 1:24-2:7.) Petitioner additionally stated that he understood the consequences of his

21  plea. (<u>Id.</u> at 2:8-4:21.) Further, Petitioner indicated his competency in writing by signing

22  the Waiver of Rights Plea of Guilty/No Contest form stating that he understands "each and

23  every one of the rights outlined above" and waives them in order to enter his nolo

24  contendere plea. (Traverse Exh. A at 31.) Finally, there is no record that Petitioner

25  ─────────────────

26          [3]Although Petitioner asserts that he was taking "psychotropic" as opposed to "anti-
    psychotic" drugs (Traverse at 10), he cites no authority and the court is not aware of any

27  providing that such a distinction alters the analysis.

28

behaved irrationally or displayed a demeanor that would provide the trial court with a bona fide doubt as to Petitioner's competence.

The only medical evaluation of Petitioner available to the trial court was that of the Amen Clinic.  (Traverse Exh. C.)  Although on August 20, 2002, the Amen Clinic found that Petitioner displayed symptoms of inattention, hyperactivity, head trauma, and polysubstance abuse, the Clinic's evaluation report does not indicate an inability on the part of Petitioner to competently enter a plea.  (Id. at 6-8.)  The only comment the Amen Clinic makes regarding Petitioner's judgment-making abilities is that "[w]hen asked what he would do in a specific crisis he displayed poor judgment.  Given a second situation, not involving a crisis, he showed reasonable judgment."  (Id. at 5.)  In addition, the Clinic evaluated Petitioner's competence and culpability at the time of the crime, not at the time of the plea hearing, months after the crime.

The state court's decision affirming Petitioner's competency in entering his nolo contendere plea was not contrary to nor an unreasonable application of Supreme Court precedent.  The transcript of the plea hearing and the available medical evaluation would not have given a reasonable judge a bona fide doubt as to Petitioner's competence at the time of the plea so as to necessitate a competency hearing.  Consequently, Petitioner has failed to establish that his plea was invalid on this ground.

        b.    The Threat of a Life Sentence and Promise of Minimum Security Custody

Petitioner contends that his plea was wrongfully induced by the threat of a life sentence and the promise of minimum security custody.  Specifically, Petitioner states that his plea "was coerced by the trial court's statement that petitioner was facing a '*Life Sentence*,' and then coupled with defense counsel's additional fabrication that petitioner's maximum exposure was that of thirty-nine (39) years, six (6) months."  (Traverse at 13 and Exh. J (errors in source).)  Further, Petitioner alleges that "the trial court promised petitioner that he would be placed in the least restrictive rehabilitative setting, i.e.,

1    minimum security" if he entered his nolo contendere plea.  (Id.)

2          A guilty plea induced by promises or threats that deprive it of the character of a

3    voluntary act is void.  See Machibroda v. United States, 368 U.S. 487, 493 (1962).  Agents

4    of the state may not produce a plea by mental coercion overbearing the will of the

5    defendant.  See Brady, 397 U.S. at 750.  Nor is coercion by a defendant's attorney or other

6    third party acceptable.  See Iaea v. Sunn, 800 F.2d 861, 866-68 (9th Cir. 1986).

7          A plea is "involuntary" if it is the product of threats, improper promises, or other

8    forms of wrongful coercion.  Brady, 397 U.S. at 750.  A plea is "unintelligent" if the

9    defendant is without the information necessary to assess intelligently "the advantages and

10   disadvantages of a trial as compared with those attending a plea of guilty . . . ."  U.S. v.

11   Hernandez, 203 F.3d 614, 619 (9th Cir. 2000).

12         According to both Petitioner and defense counsel,[4] the judge *at sentencing* stated

13   that Petitioner was facing a "life term easy" and this induced Petitioner to enter his plea.

14   (Traverse at 13 and Exh. J.)  The sentencing hearing, however, was held on October 29,

15   2002, over a month after the September 5, 2002, plea hearing.  Accordingly, Petitioner's

16   plea could not have been wrongfully coerced by the trial court's comments at sentencing

17   regarding life imprisonment.  Indeed, the only reference the trial court makes to a specific

18   sentence during the plea hearing is to the twelve year maximum sentence Petitioner would

19   serve after pleading nolo contendere.  (Traverse Exh. A at 1:15-17 and 2:8-10.)

20         Defense counsel's letter also stated that the maximum term Petitioner faced was 39

21   years and six months.  (Traverse Exh. J.)  This letter, however, was written on January 30,

22   2003, months after Petitioner's plea hearing, and thus could not have induced Petitioner's

23   plea.  Additionally, defense counsel did not exaggerate over overestimate Petitioner's

24   _____

25         [4]Petitioner attaches a January 30, 2003 letter from defense counsel to Petitioner's
     mother stating "the judge at sentencing told [Petitioner] that this plea was entered with the
26   understanding that this young man was facing, as the Court stated, a 'life term easy.'"
     (Traverse Exh. J.)
27

28

1  exposure; as Respondent correctly notes, Petitioner faced exposure of up to 70 years in

2  state prison.[5]  (Answer at 11.)

3      Petitioner further contends that "the trial court promised petitioner that he would be

4  placed in the least restrictive rehabilitative setting, i.e., minimum security" and that this

5  induced his plea.  (Traverse at 13.)  The transcript from the plea hearing, however,

6  demonstrates that the trial court made no promises regarding housing.  (Traverse Exh. A.)

7  The only reference to housing made at the plea hearing was when Petitioner's counsel

8  stated that they would wait to proceed with sentencing because they expected "some

9  significant records concerning [Petitioner's] psychological condition[,]" and they wanted

10 to submit these to the Department of Corrections with the probation report.  (Id. at 5.)

11 Petitioner's counsel stated: "I understand it doesn't make any difference to the Court."

12 (Id.)  The trail court responded: "Well, it may, because the Court can sometimes make

13 recommendations as to housing programs and that sort of thing."  (Id.)  The mere

14 suggestion that the trial court may be able to make recommendations as to Petitioner's

15 housing falls far short of a "promise," and fails to amount to coercion for purposes of

16 rendering Petitioner's plea invalid.

17     Even at the sentencing hearing, the transcript demonstrates that Petitioner's housing

18 had yet to be established.  (Respt. Exh. B.)  At sentencing, Petitioner's counsel requested

19 the trial court "recommend that [Petitioner] . . . get the lowest classification the

20 Department of Corrections can allow him."  (Id. at 254-55.)  Petitioner's mother testified

21

22     [5]The Information charged Petitioner with four counts of second degree robbery,

23 two of which included enhancements for use of a deadly or dangerous weapon and two of

24 which included enhancements for use of a firearm.  Further, Petitioner was charged with

   two counts of dissuading a witness by force or threat, with a firearm use enhancement for

25 one count and an enhancement for use of a deadly or dangerous weapon for the other.

26 Pursuant to Penal Code sections 136.1(c)(1), 211, 12022(b), 12022.5(b), and 12022.53(b),

   if Petitioner was found guilty on each of these charges, with consecutive sentences he

27 would have faced a 70 year prison term at maximum.  (Id.)

28 G:\PRO-SE\MJJ\HC.06\GRAYDN~1.WPD          9

regarding her fear that Petitioner would be "in prison for 12 years." (<u>Id.</u> at 255.)  The trial court stated that it would send Petitioner's mental health records "to the Department of Corrections in hopes that they will find for [Petitioner] the least restrictive custody status that they possibly can . . . ." (<u>Id.</u> at 262.)  The trial court later requested:

> the Department of Corrections classify this defendant at the lowest custody classification that they can.  I think that a camp environment would be appropriate for him.  He can handle that.  He can function well there.  Main-line environment is not going to be good for him.  And so the Court, with this transcript that we're going to send along, urges the Department to seek the lowest classification possible.

(<u>Id.</u> at 266.)  At the closing of the hearing, Petitioner stated, "[e]verything that you have said for me to be aware of when I go to prison, I've already thought of many times . . . ." (<u>Id.</u>)  Thus, even at sentencing, the record establishes that the trial court had not promised a specific housing arrangement for Petitioner; rather, the trial court merely offered to request, and did request, that the Department of Corrections place Petitioner in a less restrictive housing environment.  Further, Petitioner himself subjectively believed he was going to prison, foreclosing the possibility that his plea was wrongfully induced by promises of a less restrictive housing arrangement.

The state court's denial of petitioner's claim was not contrary to nor an unreasonable application of Supreme Court precedent.  Petitioner's plea was not coerced by threats of a life sentence because the only reference the trial court made to a life term occurred at the sentencing hearing, over a month after Petitioner entered his plea.  Further, Petitioner's plea was not induced by promises of minimum security housing.  The trial court only offered to recommend less restrictive housing, and Petitioner himself believed he was going to go to prison on the day he entered his plea.  Consequently, Petitioner's plea is not rendered invalid on these grounds.

c.    <u>Advice on Elements of the Robbery Offense</u>

Petitioner contends that his plea was not knowing and voluntary because he was inadequately apprised of the elements of his robbery charge.  (Petition at 4.)  Petitioner

1  states that he "was never made aware of the required culpability that was necessary for

2  him to ascertain the nature of the crime of robbery." (Id.)  He further states that had he

3  been aware of the specific intent requirement for robbery, he "would not have went along

4  with defense counsel's advise to plead no contest." (Traverse at 13 (errors in source).)

5      If a defendant pleads guilty to a crime without having been informed of the crime's

6  elements, the standard set out in Brady is not met, and the plea is invalid.  Bradshaw v.

7  Stumpf, 545 U.S. 175, 182-83 (2005).  The Court, however, "has never held that the judge

8  must himself explain the elements of each charge to the defendant on the record."  Id. at

9  183.  Instead, a plea may be constitutionally valid "where the record accurately reflects

10  that the nature of the charge and the elements of the crime were explained to the defendant

11  by his own, competent counsel."  Id.

12      Here, the record establishes that Petitioner was informed of the nature of the

13  robbery, including the intent element.  The information, filed on June 21, 2002, states

14  under the first count of second degree robbery that Petitioner acted "willfully, unlawfully,

15  and by means of force and fear . . . ." (Respt. Exh. A at 1.)  On September 5, 2002,

16  Petitioner initialed the Waiver of Rights, Plea of Guilty/No Contest stating: "I offer my

17  plea of 'Guilty'/'No Contest' freely and voluntarily and of my own accord and with full

18  understanding of all matters set forth in the Information and in this waiver." (Traverse

19  Exh. A at 12.)  Petitioner further initialed the Waiver next to the paragraph stating: "I have

20  discussed the charge(s), the facts, the possible defenses, and the consequences of my plea

21  with my attorney." (Id.)  Because the record reflects that Petitioner was informed of the

22  intent element of the robbery charge, Petitioner's plea was constitutionally valid.

23      Petitioner notes that his confusion regarding the intent requirement was

24  demonstrated at the plea hearing.  (Petition at 18-19.)  At the hearing, the trial court asked

25  if Petitioner admitted that he "intentionally and personally used a firearm, namely, a

26  handgun . . . ." (Traverse Exh. A at 4.)  Petitioner's counsel stated that Petitioner had a

27

28      G:\PRO-SE\MJJ\HC.06\GRAYDN~1.WPD        11

1   question as to the word "intentionally."  (Id.)  The trial court responded: "I'm not sure that

2   there is any other way to do it other than admitting it[,]" at which point Petitioner stated, "I

3   admit that."  (Id.)  Accordingly, the confusion at the plea hearing regarding intent

4   extended only to the firearm use enhancement, to which Petitioner eventually admitted.

5          Again, the state court's denial of Petitioner's claim that his plea was not voluntary

6   and intelligent was neither contrary to nor an unreasonable application of federal law.  The

7   record reflects that Petitioner was aware of and understood the intent element of the

8   robbery offense, and this is sufficient to ensure a valid plea under Bradshaw.

9          **2.      Ineffective Assistance of Appellate Counsel**

10          Petitioner asserts that he was denied the effective assistance of appellate counsel on

11   direct appeal because counsel did not raise the claims discussed above.  (Petition at 24-26.)

12   The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant

13   the effective assistance of counsel on his first appeal as of right.  Evitts v. Lucey , 469 U.S.

14   387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed

15   according to the standard set out in Strickland v. Washington, 466 U.S. 668, 686 (1984).

16   Miller v. Keeney , 882 F.2d 1428, 1433 (9th Cir. 1989).  A petitioner thus must show that

17   counsel's failure to raise claims fell below an objective standard of reasonableness and that

18   there is a reasonable probability that, but for counsel's unprofessional errors, the petitioner

19   would have prevailed on appeal. Id. at 1434 & n.9 (citing Strickland, 466 U.S. at 688,

20   694).  In that regard, the weeding out of weaker issues is widely recognized as one of the

21   hallmarks of effective appellate advocacy.  Id. at 1434.  Consequently, appellate counsel

22   frequently will remain above an objective standard of competence and have caused his

23   client no prejudice where he declines to raise a weak issue. Id.

24          The Superior Court determined that Petitioner:

25
26          failed to state a prima facie case for habeas relief on the basis of his
            competence to enter the nolo contendere plea. As Petitioner has failed to
            demonstrate a "sufficient probability" that he would have prevailed on this
27

28   G:\PRO-SE\MJJ\HC.06\GRAYDN~1.WPD          12

issue, had it been raised on appeal, appellate counsel's failure to raise this issue on appeal cannot give rise to habeas relief . . . .

(Respt. Exh. H at 2-3.)

The state court's denial of Petitioner's ineffective assistance of appellate counsel claim was neither contrary to nor an unreasonable application of federal law.  As discussed above, Petitioner's challenges to his guilty plea fail on their merits.  Accordingly, the failure to raise them on appeal was neither deficient nor prejudicial, and Petitioner is not entitled to habeas relief on this claim.

### 3.      Ineffective Assistance of Trial Counsel

Petitioner asserts that trial counsel was ineffective for failing to inform experts of Petitioner's alcohol consumption prior to the robbery.  (Petition at 33.)  Further, Petitioner claims counsel's decision that Petitioner's mental impairment and alcohol consumption would be insufficient to form a defense "was incredible."  (Id. at 34.)  Finally, Petitioner contends that counsel failed to investigate how Paxil withdrawal, coupled with alcohol consumption, would render him "incapable of forming the required specific intent to be found guilty of . . . robbery."  (Id. at 33-34.)

A defendant who pleads guilty cannot later raise in habeas corpus proceedings independent claims relating to the deprivation of constitutional rights that occurred before the guilty plea.  See Haring v. Prosise, 462 U.S. 306, 319-20 (1983).  Nor may a defendant who pleads guilty collaterally challenge a voluntary and intelligent guilty plea entered into with the advice of competent counsel.  United States v. Broce, 488 U.S. 563, 574 (1989).

The only challenges left open in federal habeas corpus after a guilty plea are the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead.  Hill v. Lockhart, 474 U.S. 52, 56-57 (1985).  "A defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel'" was not within the range of

1  competence demanded of attorneys in criminal cases.  Id. (quoting Tollett v. Henderson,

2  411 U.S. 258, 267 (1973)).

3      A claim of ineffectiveness of trial counsel must satisfy the same two-part test

4  applicable to appellate counsel under Strickland.  Specifically, Petitioner must demonstrate

5  that counsel's advice fell below an objective standard of reasonableness and that there is a

6  reasonable probability that, but for counsel's unprofessional errors, he would have

7  prevailed on appeal.  Miller, 882 F.2d at 1434.

8      Petitioner claims that he "informed counsel many times" that he committed crimes

9  only after he began suffering from Paxil withdrawal and consuming large quantities of

10  alcohol.  (Decl. of Brandon Gray at ¶ 6.)  Petitioner asserts that counsel was ineffective for

11  failing to inform experts at the Amen Clinic of these facts.  (Petition at 33.)  The Amen

12  Clinic report, however, acknowledges Petitioner's alcohol use, and states that this

13  "certainly contributed to the alteration of mental function."  (Traverse Exh. C at 75.)

14  Further, the report repeatedly acknowledges Petitioner's use of alcohol, particularly to

15  relieve the effects of Paxil withdrawal.  (Id. at 56, 58, and 62.)  As stated by defense

16  counsel, however, the Amen clinic did not find sufficient impairment to negate Petitioner's

17  specific intent.  (Respt. Exh. B at 253.)  Because the Amen Clinic was clearly aware of

18  Petitioner's alcohol abuse and withdrawal symptoms, Petitioner has not demonstrated that

19  counsel's alleged failure to inform the Amen Clinic of Petitioner's voluntary intoxication

20  on the day of the robbery prejudiced his case or caused him to enter an involuntary or

21  unintelligent plea.

22

23      Petitioner further fails to meet the standard set out in Strickland on his claim that

24  counsel failed to adequately develop a defense based on voluntary intoxication negating

25  Petitioner's specific intent.  The record from the sentencing hearing demonstrates that

26  defense counsel investigated, but ultimately rejected, a diminished capacity defense after

27  getting the opinion of experts.  (Respt. Exh. B at 252-53.)  Counsel stated:

28  G:\PRO-SE\MJJ\HC.06\GRAYDN~1.WPD       14

> We looked at the possibility of diminished capacity to reduce the – so there wouldn't be – if there was a reasonable doubt about capacity, you couldn't have a specific intent to commit robbery.  Again, we used honest experts.  Dr. Reidy and the people from Amen Clinic.  Although they saw problems, they could not honestly say that his judgment was so badly impaired that he could not form the specific intent to steal, so that was gone.

(Id. at 253.)  The trial court at sentencing noted that the Amen Clinic's report was "very very thorough . . . more thorough than almost any other case I've seen."  (Id. at 258.)  Accordingly, Petitioner fails to show that Counsel's investigation fell below an objective standard of reasonableness.  Further, Petitioner fails to effectively demonstrate how this defense could have been credible and thus how failing to plead diminished capacity prejudiced his case.

In any case, a defendant generally cannot establish prejudice if he received significant benefits from his plea agreement.  See United States v. Baramdyka, 95 F.3d 840, 845-47 (9th Cir. 1996). Counsel may commit serious errors, but as long as counsel succeeds in substantially reducing the sentence Petitioner would have likely received had he gone to trial, there is no prejudice.  Id.

At the sentencing hearing, counsel acknowledged that the "District Attorney's office has not been unreasonable . . . [and] they were willing to allow a plea that would give him the minimum sentence that the Court can impose under the law as the law stands.  So it's pretty hard to criticize them for that or to say they have been unfair."  (Respt. Exh. B at 253.)  Further, the trial court stated that "the prosecutor's office has been imminently responsible . . . . They have done a lot.  They've reduced this down to the bear [sic] minimum of what – I don't remember what the maximum exposure was, but it's huge."  (Id. at 261-62.)  Petitioner not only received a substantially reduced sentence of 12 years instead of a possible 70 years, but the trial court also recommended the least restrictive custody status available.  (Id. at 262.)  In light of these benefits Petitioner received from his plea agreement, Petitioner is unable to establish prejudice due to trial counsel's actions.

G:\PRO-SE\MJJ\HC.06\GRAYDN~1.WPD          15

1    Petitioner has failed to demonstrate that he received ineffective assistance of trial

2   counsel under Strickland.  Petitioner has not demonstrated that counsel's alleged failure to

3   inform the Amen Clinic of his alcohol consumption the day of the crime prejudiced his

4   case.  Further, Petitioner has failed to show that counsel's inquiry into a diminished

5   capacity defense fell below an objective standard of reasonableness or that it prejudiced

6   his case.  Indeed, counsel only rejected this defense after experts thoroughly examined

7   Petitioner and consulted with trial counsel regarding their findings.  Finally, Petitioner is

8   unable to demonstrate prejudice in light of the significant benefits he received from his

9   plea agreement.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

10                                              **CONCLUSION**

11    For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The

12   clerk shall close the file and terminate all pending motions.

13    IT IS SO ORDERED.

15   DATED:   10/23/07

16

17                                               MARTIN J. JENKINS
                                                 United States District Judge